**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANTHONY G. MORTON, Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>  v.<br><br>LEIDOS HOLDINGS, INC., ROGER A. KRONE, and JAMES C. REAGAN,<br><br>        Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Anthony G. Morton ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Leidos Holdings, Inc. ("Leidos" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Leidos; and (c) review of other publicly available information concerning Leidos.

## NATURE OF THE ACTION AND OVERVIEW

1.     This is a class action on behalf of persons and entities that purchased or otherwise acquired Leidos securities between May 4, 2020 and February 23, 2021, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Leidos is a science, engineering, and information technology company that provides services and solutions in the defense, intelligence, homeland security, civil and health markets, both domestically and internationally.

3.     On February 16, 2021, Spruce Point Capital Management LLC ("Spruce Point") published a research report, alleging, among other things that "Leidos is potentially covering up at least $100m of fictitious sales, mischaracterizing $355 - $367m of international revenue." The report also alleged that the Company was "concealing numerous product defects from investors, notably faulty explosive detection systems at airports and borders."

4.     On this news, the Company's share price fell $2.58, or 2.4%, to close at $105.22 per share on February 16, 2021, on unusually heavy trading volume.

5.    On February 23, 2021, Leidos announced its fourth quarter and full year 2020 financial results in a press release. Therein, the Company reported $89 million revenue related to the SD&A businesses for the fourth quarter, meaning that after two full quarters, the acquisition generated only $163 million in sales (or $326 million annualized), falling well short of projected $500 million sales. The Company expected cash flow of $850 million, well below analyst estimates of $1.083 billion. .

6.    On this news, the Company's stock price fell $10.29, or 9.91%, to close at $93.51 per share on February 23, 2021.

7.    On February 24, 2021, Spruce Point highlighted that Leidos had "materially expanded" the risk disclosures in its annual report for the year ended December 31, 2020. Spruce Point tweeted: "We believe it is validating all the major points of our report."

8.    On this news, the Company's stock price fell $3.13, or 3.3%, to close at $90.38 per share on February 24, 2021, on unusually heavy trading volume.

9.    Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the purported benefits of the Company's acquisition of L3Harris' Security Detection & Automation businesses were significantly overstated; (2) that Leidos' products suffered from numerous product defects, including faulty explosive detection systems at airports, ports, and borders; (3) that, as a result of the foregoing, the Company's financial results were significantly overstated; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

10.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

### JURISDICTION AND VENUE

11.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

13.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

14.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

### PARTIES

15.     Plaintiff Anthony G. Morton, as set forth in the accompanying certification, incorporated by reference herein, purchased Leidos securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

16.     Defendant Leidos is incorporated under the laws of Delaware with its principal executive offices located in Reston, Virginia. Leidos's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "LDOS."

17.     Defendant Roger A. Krone ("Krone") was the Company's Chief Executive Officer ("CEO") at all relevant times.

18.     Defendant James C. Reagan ("Reagan") was the Company's Chief Financial Officer ("CFO") at all relevant times.

19.     Defendants Krone and Reagan (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

20.     Leidos is a science, engineering, and information technology company that provides services and solutions in the defense, intelligence, homeland security, civil and health markets, both domestically and internationally.

## Materially False and Misleading
## Statements Issued During the Class Period

21.     The Class Period begins on May 4, 2020. On that day, Leidos announced that it had completed the acquisition of L3Harris Technologies' Security Detection and Automation businesses ("SD&A Businesses"). In a press release, the Company stated, in relevant part:

**Compelling Strategic and Operational Benefits**

- **Expands Product Portfolio in High-Growth, Global Security Market:** The closing of this acquisition creates a comprehensive and cohesive security detection platform by adding technologies including checkpoint CT scanners, people scanners, explosives trace detectors, checked baggage screeners, and automated tray return systems (ATRS) to Leidos' security detection portfolio. The combined solutions enhance the company's offerings in an evolving global security product market, which allows diversification beyond the federal budget and positions the company for long-term growth.

- **Increased International Presence Diversifies Revenue:** This business expands customer penetration across aviation, ports, borders, and critical infrastructure internationally and increases Leidos' international security products revenue more than six-fold. The deal brings Leidos products into 75 additional countries.

- **Growth and Innovation Accelerated by Scale:** The integration of these new businesses into a comprehensive portfolio enables Leidos to leverage its core technical strengths, in-depth biometrics capabilities, and global sales channels to rapidly develop and deliver new solutions. Technology investments across the combined portfolio will help accelerate innovation to address emerging and evolving threats and improve service efficiency for customers.

22.     On May 5, 2020, Leidos announced its first quarter 2020 financial results in a press release that stated, in relevant part:

•Revenues: $2.89 billion, year-over-year growth of 12%

•Diluted Earnings per Share: $0.80; Non-GAAP Diluted Earnings per Share: $1.19

•Net Bookings: $5.5 billion (book-to-bill ratio of 1.9)

•Cash Flows from Operations: $372 million

\*       \*       \*

**Summary Results**

Revenues for the quarter were $2.89 billion, compared to $2.58 billion in the prior year quarter, reflecting a 12.1% increase. Revenues for the quarter included $129 million related to the acquisition of Dynetics, Inc. ("Dynetics").

Operating income for the quarter was $192 million, consistent with the prior year quarter. Operating income margin decreased to 6.6% from 7.5% in the prior year quarter. Non-GAAP operating income margin for the quarter was 8.5%, compared to 9.3% in the prior year quarter, primarily attributable to higher indirect expenditures, including the impacts of the coronavirus pandemic ("COVID-19"), and a charge related to an international receivable, partially offset by higher net profit write-ups in the current quarter.

Diluted earnings per share ("EPS") attributable to Leidos common stockholders for the quarter was $0.80, compared to $1.29 in the prior year quarter. The prior year quarter results included a $0.44 per share impact from the gain on the sale of our commercial cybersecurity business. Non-GAAP diluted EPS for the quarter was $1.19, compared to $1.13 in the prior year quarter. The weighted average diluted share count for the quarter was 144 million compared to 147 million in the prior year quarter.

23.    On May 5, 2020, the Company filed its quarterly report on Form 10-Q for the period ended April 3, 2020, affirming the previously reported financial results. Regarding its internal control over financial reporting, Leidos stated:

**Changes in Internal Control Over Financial Reporting**

On January 31, 2020, we completed the acquisition of Dynetics. In conducting our evaluation of the effectiveness of our internal control over financial reporting, we excluded Dynetics from our evaluation for the first quarter of 2020. We are in the process of integrating Dynetics into our system of internal control over financial reporting.

Other than the foregoing, there have been no changes in our internal control over financial reporting that occurred in the quarterly period covered by this report that materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

24.    On August 4, 2020, Leidos announced its second quarter 2020 financial results in a press release that stated, in relevant part:

- Revenues: $2.91 billion, year-over-year growth of 6.8%

- Diluted Earnings per Share: $1.06; Non-GAAP Diluted Earnings per Share: $1.55

- Net Bookings: $4.6 billion (book-to-bill ratio of 1.6)

- Cash Flows from Operations: $422 million

\*        \*        \*

**Summary Results**

Revenues for the quarter were $2.91 billion, compared to $2.73 billion in the prior year quarter, reflecting a 6.8% increase. Revenues for the quarter included $206 million and $80 million related to the acquisitions of Dynetics, Inc. ("Dynetics") and L3Harris Technologies' security detection and automation businesses (the "SD&A Businesses"), respectively.

Operating income for the quarter was $249 million, compared to $210 million in the prior year quarter, reflecting an 18.6% increase. Operating income margin increased to 8.5% from 7.7% in the prior year quarter. Non-GAAP operating income margin for the quarter was 11.2%, compared to 9.4% in the prior year quarter, primarily attributable to an $81 million net gain recognized upon the receipt of proceeds related to the VirnetX, Inc. ("VirnetX") legal matter and program wins, partially offset by reduced volume on certain contracts due to negative impacts related to the coronavirus pandemic ("COVID-19").

Diluted earnings per share ("EPS") attributable to Leidos common stockholders for the quarter was $1.06, compared to $0.93 in the prior year quarter. Non-GAAP diluted EPS for the quarter was $1.55, compared to $1.16 in the prior year quarter. The weighted average diluted share count for the quarter was 144 million compared to 146 million in the prior year quarter.

25.    The same day, the Company filed its quarterly report on Form 10-Q with the SEC for the period ended July 3, 2020 (the "2Q20 10-Q"), affirming the previously reported financial results. It also reported the following revenue by geographic location:

| | Three Months Ended July 3, 2020 | | | | Six Months Ended July 3, 2020 | | | |
| | Defense Solutions | Civil | Health | Total | Defense Solutions | Civil | Health | Total |
|---|---|---|---|---|---|---|---|---|
| | (in millions) | | | | | | | |
| United States | $ 1,560 | $ 691 | $ 397 | $ 2,648 | $ 3,073 | $ 1,310 | $ 924 | $ 5,307 |
| International | 196 | 48 | — | 244 | 388 | 61 | — | 449 |
| Total | $ 1,756 | $ 739 | $ 397 | $ 2,892 | $ 3,461 | $ 1,371 | $ 924 | $ 5,756 |

26.     Regarding its internal control over financial reporting, Leidos stated in the 2Q20 10-Q:

**Changes in Internal Control Over Financial Reporting**

On January 31, 2020 and May 4, 2020, we completed the acquisitions of Dynetics and the SD&A Businesses, respectively. In conducting our evaluation of the effectiveness of our internal control over financial reporting, we excluded Dynetics and the SD&A Businesses from our evaluation for the second quarter of fiscal 2020. We are in the process of integrating Dynetics and the SD&A Businesses into our system of internal control over financial reporting.

Other than the foregoing, there have been no changes in our internal control over financial reporting that occurred in the quarterly period covered by this report that materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

27.     On November 2, 2020, Leidos announced its third quarter 2020 financial results in a press release that stated, in relevant part:

- Revenues: $3.24 billion, year-over-year growth of 14.4%

- Diluted Earnings per Share: $1.13; Non-GAAP Diluted Earnings per Share: $1.47

- Net Bookings: $4.3 billion (book-to-bill ratio of 1.3)

- Cash Flows from Operations: $592 million

                    *       *       *

**Summary Results**

Revenues for the quarter were $3.24 billion, compared to $2.84 billion in the prior year quarter, reflecting a 14.4% increase. Revenues for the quarter included $302 million and $74 million related to the acquisitions of Dynetics, Inc. ("Dynetics") and L3Harris Technologies' security detection and automation businesses (the "SD&A Businesses"), respectively.

Operating income for the quarter was $258 million, compared to $249 million in the prior year quarter, reflecting a 3.6% increase. Operating income margin decreased to 8.0% from 8.8% in the prior year quarter. Non-GAAP operating income margin for the quarter was 10.0%, compared to 10.4% in the prior year quarter, primarily attributable to a $54 million recovery recognized in the prior year quarter related to the receipt of the Greek arbitration award.

Diluted earnings per share ("EPS") attributable to Leidos common stockholders for the quarter was $1.13, compared to $1.11 in the prior year quarter. Non-GAAP diluted EPS for the quarter was $1.47, compared to $1.36 in the prior year quarter. The weighted average diluted share count for the quarter was 144 million compared to 145 million in the prior year quarter.

28.     The same day, the Company filed its quarterly report on Form 10-Q for the period ended October 2, 2020 (the "3Q20 10-Q"), affirming the previously reported financial results. It also reported the following revenue by geographic location:

| | Three Months Ended October 2, 2020 | | | | Nine Months Ended October 2, 2020 | | | |
|---|---|---|---|---|---|---|---|---|
| | Defense Solutions | Civil | Health | Total | Defense Solutions | Civil | Health | Total |
| | (in millions) | | | | | | | |
| United States | $ 1,731 | $ 708 | $ 520 | $ 2,959 | $ 4,804 | $ 2,018 | $ 1,444 | $ 8,266 |
| International | 220 | 39 | — | 259 | 608 | 100 | — | 708 |
| Total | $ 1,951 | $ 747 | $ 520 | $ 3,218 | $ 5,412 | $ 2,118 | $ 1,444 | $ 8,974 |

29.     Regarding its internal control over financial reporting, Leidos stated in its 3Q20 10-Q:

**Changes in Internal Control Over Financial Reporting**

On January 31, 2020 and May 4, 2020, we completed the acquisitions of Dynetics and the SD&A Businesses, respectively. In conducting our evaluation of the effectiveness of our internal control over financial reporting, we excluded Dynetics and the SD&A Businesses from our evaluation for the third quarter of fiscal 2020. We are in the process of integrating Dynetics and the SD&A Businesses into our system of internal control over financial reporting.

Other than the foregoing, there have been no changes in our internal control over financial reporting that occurred in the quarterly period covered by this report that materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

30.     The above statements identified in ¶¶ 21-29 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that the purported benefits of the Company's acquisition of L3Harris' Security Detection & Automation businesses were significantly overstated; (2) that Leidos' products suffered from numerous product defects,

including faulty explosive detection systems at airports, ports, and borders; (3) that, as a result of the foregoing, the Company's financial results were significantly overstated; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**<u>Disclosures at the End of the Class Period</u>**

31.    On February 16, 2021, Spruce Point published a research report, alleging, among other things that "Leidos is potentially covering up at least $100m of fictitious sales, mischaracterizing $355 - $367m of international revenue." The report also alleged that the Company was "concealing numerous product defects from investors, notably faulty explosive detection systems at airports and borders." Specifically, the report alleged:

- **We believe Leidos wasted $1 billion on the acquisition of L3Harris' (NYSE: LHX) Security Detection & Automation ("SD&A") business – and has potentially misled investors on its financial benefits.** In early 2020, Leidos leveraged its balance sheet to acquire this business. While management claims the SD&A deal will help Leidos achieve double digit growth, 15% margins, $500 million in revenues and boost international sales from 10% to 13% of total revenues in 2020, Spruce Point believes none of these claims are possible. ***After conducting expert interviews, evaluating foreign financial filings and dissecting management's claims, we are still unable to reconcile at least $100 million of total, and $355 million to $367 million of claimed, international sales.*** We find evidence that one foreign entity in the UAE tied to the automation business recently restated sales and net income lower by 68% and 98%, respectively. We also find unusual transactions with a Thailand distributor – M.I.T Solutions – that has been linked to a graft scandal that led to the imprisonment of a Thailand Transportation Minister. We believe Leidos should impair the value of the business, and that the Board of Directors (the "Board") should immediately terminate Chief Executive Officer ("CEO") Roger Krone, Chief Financial Officer ("CFO") James Reagan and Chief Accounting Officer ("CAO") Christopher Cage for abysmal due diligence failures.

- **Evidence suggests that under CEO Roger Krone's leadership, Leidos is concealing numerous product defects from investors, including faulty explosive detection systems at airports, ports and borders.** Mr. Krone joined Leidos after a long career with Boeing (NYSE: BA), where he worked under Dennis Muilenburg, who eventually rose to CEO and was later ousted following the Boeing 737 MAX scandal. Federal reports

detailed a "culture of concealment" at Boeing under Mr. Muilenberg's leadership and noted that the desire to meet goals and expectations jeopardized the safety of the flying public. We believe this is troubling in context. Backed by import records, a distributor lawsuit alleging fraud and expert interviews, Spruce Point finds evidence that the Company is concealing numerous product defects – C-MobileTM, ClearScanTM and MV3DTM – and that the SD&A business has underinvested in the latest technology, resulting in market share loss. These challenges could present a "Material Adverse Effect" with tail risk financial liabilities to Leidos shareholders.

- **Evidence indicates Leidos is deflecting growing competitive threats from Amazon (Nasdaq: AMZN) and Microsoft (Nasdaq: MSFT).** As an outsourced IT service provider to federal agencies, Leidos participates in cloud modernization projects. Amazon has been investing heavily in this area and growing its presence in the Washington D.C. region. There is a growing risk, acknowledged to us by a former senior C-Suite Leidos executive, that the technology leaders could start doing direct deals vs. subcontracting. Booz Allen Hamilton (NYSE: BAH), a key competitor to Leidos, has already acknowledged the increasing competitive environment for hiring technology talent and recently disclosed recruitment challenges. Leidos has failed to acknowledge any risk to its business from these dynamics.

(Emphasis in bold and italics is added; emphasis in bold in original.)

32.    Specifically, regarding the SD&A Businesses, the report stated:

In early 2020, Leidos acquired L3Harris's Security Detection & Automation (SD&A) for $1.0 billion, leveraging its balance sheet to border, port, and airport threat and explosive detection equipment. While Leidos claims the deal would add $500m in revenues growing double digit, boost int'l sales by 3%, and that the deal is progressing ahead of its milestones, Spruce Point believes the deal has been an abysmal failure, either through Leidos' inept due diligence or being duped by L3Harris. We believe Leidos is potentially covering up at least $100m of fictitious sales, mischaracterizing $355 - $367m of international revenue, and concealing defective L3Harris products that jeopardize the safety of people globally. Leidos is showing classic signs of cash flow struggles. We believe at least four factors are temporarily inflating Operating Cash Flow by an estimated 67%-78% in YTD'20. We see numerous errors and inconsistencies with management's figures (including organic sales growth). We believe at best these are sloppy errors, and at worst case, are intentional acts by Leidos to obscure its strains from investors.

*      *      *

Spruce Point has significant concerns that SD&A's revenues collapsed post acquisition. The Company stated that pro forma international revenues would be

~13% post closure, but international revenues now stand at just 8%. . . . From Leidos' disclosures, Spruce Point estimates that approximately 90% of SD&A's revenues are claimed to be international. Yet, when it was under L3's control through early 2019, they emphasized that the U.S. TSA, CBP and others were notable customers. Our industry expert and a former Leidos executive both agreed that ex: MacDonald Humfrey ("MH"), a majority of L3Harris Security and Detection business was U.S. domestic. Furthermore, we estimate approximately 84% (or $88m) of MH's revenues came from non-North/South American sources.(1) Where is the rest of the $355 - $367m international revenue coming from?

*　　*　　*

With Q3 2020 run rate revenues at Security Detection & Automation (SD&A) running 41% below plan, how are management's claims credible that they are "ahead of milestones" and things are "going really, really well"?

| $ in mm | L3 Communications (LLL) | | | L3Harris Tech (LHX) | Leidos (LDOS) | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | _2017_ | _2018_ | _Q1 2019_ | June 29, 2019 | _Deal Announce Feb 4, 2020_ | _Deal Close May 4, 2020_ _Q2 2020_ April 4 – July 3, 2020 | _Q3 2020_ July 4, 2020 – Oct 2, 2020 |
| Electronic Systems | $3,024 | $2,744 | -- | -- | -- | -- | -- |
| % Security & Detection Systems | 14% | 18% | -- | -- | | | |
| **Total Security & Detection Revenues** | $423.4[1] | $493.9 | **No Disclosure** | **No Disclosure** | **We expect 2020E Revenues of $500m** | **$80m Quarterly Contribution ($480m run rate implied annual revenues)** | **$74 Quarterly Contribution ($297m run rate implied annual revenues)** |
| **Key Management Commentary** | _"And within security detection systems or aviation security, we definitely have lower order flow in 2017, and we see the orders improving this year in 2018"_ | _"(Q4) Electronics margin declined 20 basis points to 13.6 due to lower profitability at Security & Detection Systems, primarily related to sales mix"_ | _"In our Electronic Systems segment, we combined our Security & Detection business into Commercial Aviation and are evaluating steps to rationalize further our facilities footprint"_ | **No Disclosure** | _"The transaction is also expected to be immediately accretive to revenue growth, EBITDA margins, and non-GAAP earnings per share. We've also identified cost and revenue synergy opportunities"_ | _"By the way, they (Security Detection & Automation) are ahead of our plan"_ | _"Both Dynetics and security detection and automation businesses, they're doing really quite well. I mean we're ahead of our milestones. We're getting systems converted, people converted to our employee system. And so that's going really, really well"_ |

(Emphasis in original.)

33.　　Regarding product defects, Spruce Point stated:

Spruce Point finds it concerning that a little more than a month after Leidos announced its intention to acquire L3/Harris Security Detection Systems on Feb 4, 2020, its Oman distributor Dahra Engineering filed a legal complaint outlining its multi-year struggles with the Company. The legal documents allege fraudulent misrepresentation and inducement related to its CX Mobile units – a port and border

screening product that Dahra claims was defective and not capable of performing as represented.

*     *     *

It appears that the products being marked as defective are core to Leidos' offering and critical to detecting explosives in airport baggage systems.

34.     Spruce Point's report asserted that "there are multiple signs that Leidos is trying to

mitigate operating cash flow (OCF) pressures." Specifically, it stated:

We identify at least four factors that are temporarily inflating OCF by an estimated 67%-78%. **We also point out numerous errors and inconsistencies with management's figures. We believe at best, these are just sloppy errors, and at worst case these are intentional acts by management to obscure its strains from investors.** We observe that Free Cash Flow (OCF – Capex) was recently added as a new factor influencing management short term annual incentive bonus. We believe this provides greater incentive to manipulate results.

[Excerpt of slide below:]

| Factor Affecting Cash Flow | Concern |
|---|---|
| Accounts Receivable Factoring | LDOS started an AR factoring program, to allow accelerated collection. It is now claiming investors should ignore it. Yet, we believe there are mathematical errors and inconsistencies in its accounting |
| Deferred Revenue | LDOS experienced a large and unexplained increase in Deferred Revenues in Q3'2020, but gave no explanation –a departure from previous disclosure practices. This suggests a large customer pre-payment or cash flow pull-forward |
| VirnetX Award | LDOS called out the $85m cash flow benefit in Q2, but didn't highlight the tax implications. Later, management revealed $75m of tax consequences associated with the legal win |
| Tax Deferral | LDOS has made use of the CARES Act to defer employer required Social Security taxes. Again, we find inconsistent disclosures suggesting either $98m or $140m of YTD deferrals. It also received a $10m ETC credit. We show both cases to arrive at our low and high scenarios |

(Emphasis in original.)

35.     On this news, the Company's share price fell $2.58, or 2.4%, to close at $105.22 per share on February 16, 2021, on unusually heavy trading volume.

36.     On February 23, 2021, Leidos announced its fourth quarter and full year 2020 financial results in a press release. Therein, the Company reported $89 million revenue related to the SD&A businesses for the fourth quarter, meaning that after two full quarters, the acquisition generated only $163 million in sales (or $326 million annualized), falling well short of projected $500 million sales. The Company expected cash flow of $850 million, well below analyst estimates of $1.083 billion. Specifically, it stated:

- Revenues: $3.25 billion for fourth quarter; $12.30 billion for the year

- Diluted Earnings per Share: $1.37 for fourth quarter, year-over-year growth of 9%; $4.36 for the year

- Non-GAAP Diluted Earnings per Share: $1.63 for fourth quarter, year-over-year growth of 8%; $5.83 for the year

- Cash Flows from Operations: $52 million used in operations for fourth quarter; $1,334 million provided by operations for the year

*        *        *

Revenues for the quarter were $3.25 billion, compared to $2.95 billion in the prior year quarter, reflecting a 10.1% increase. Revenues for the quarter included $300 million and $89 million related to the acquisitions of Dynetics, Inc. ("Dynetics") and L3Harris Technologies' security detection and automation businesses (the "SD&A Businesses"), respectively.

*        *        *

**Forward Guidance**

The Company's outlook for fiscal year 2021, which excludes the announced acquisition of Gibbs & Cox, is as follows:

- Revenues of $13.7 billion to $14.1 billion;

- Adjusted EBITDA margins of 10.3% to 10.5%;

- Non-GAAP diluted EPS of $6.15 to $6.45; and

- Cash flows provided by operating activities at or above $850 million.

37.     During a conference call held the same day in connection with the results, defendant Reagan stated that "the SD&A business was impacted by a longer than previously expected decline in air travel, resulting in lower revenue for the year." He explained that "half of it is driven by reduction in product sales, where customers have deferred making orders or receipt of orders, and then roughly half of it is driven in lower services."

38.     On this news, the Company's stock price fell $10.29, or 9.91%, to close at $93.51 per share on February 23, 2021.

39.     The same day, Spruce Point tweeted: "Changes acquired cash from the distressed SD&A business from $30 to $26m? Working capital adjustment changes from $20 to $31m. This asset is a total black box."

40.     On February 24, 2021, Spruce Point highlighted that Leidos had "materially expanded" the risk disclosures in its annual report for the year ended December 31, 2020 (the "2020 10-K"), which had been filed after the market closed on February 23, 2021. Spruce Point tweeted: "We believe it is validating all the major points of our report." Spruce Point noted that Leidos' 2020 10-K acknowledged risks of product defects in the following slide, pointing out the additions in yellow:



We Believe Leidos Expanded Risk Factors Around
Its M&A Are Validating Spruce Point's Concerns



**Leidos is now including language about product defects, assumption of material liabilities, and the need to implement or improve financial controls of acquired companies.**

*We have made and continue to make acquisitions, investments, joint ventures and divestitures that involve numerous risks and uncertainties.*

We selectively pursue strategic acquisitions, investments and joint ventures. These transactions require significant investment of time and resources and may disrupt our business and distract our management from other responsibilities. Even if successful, these transactions could reduce earnings for a number of reasons, including the amortization of intangible assets, impairment charges, acquired operations that are not yet profitable or the payment of additional consideration under earn-out arrangements if an acquisition performs better than expected. Acquisitions, investments and joint ventures pose many other risks that could adversely affect our reputation, operations or financial results, including:
- we may not be able to identify, compete effectively for or complete suitable acquisitions and investments at prices we consider attractive;
- we may not be able to accurately estimate the financial effect of acquisitions and investments on our business, and we may not realize anticipated synergies or acquisitions may not result in improved operating performance;
- we may not be able to successfully manage the integration process for acquisitions and the integration process may divert management time and focus from operating our business;
- acquired technologies, capabilities, products and service offerings, particularly those that are still in development when acquired, may not perform as expected, may have defects or may not be integrated into our business as expected;
- we may have trouble retaining key employees and customers of an acquired business, including due to cultural challenges, or otherwise integrating such businesses, such as incompatible accounting, information management or other control systems, which could result in unforeseen difficulties;
- we may assume material liabilities that were not identified as part of our due diligence or for which we are unable to receive a purchase price adjustment or reimbursement through indemnification or there may be other unanticipated write-offs or charges;
- financial reporting, revenue recognition or other financial or control deficiencies of the acquired company that we don't adequately address and that cause our reported results to be incorrect;
- we may need to implement or improve controls, procedures and policies at a business that prior to the acquisition may have lacked sufficiently effective controls, procedures and policies;
- we may assume legal or regulatory risks, particularly with respect to smaller businesses that have immature business processes and compliance programs, or we may face litigation with respect to the acquired company, including claims from terminated employees, customers, former stockholders or other third parties;

Source: Leidos 2020 Annual Report

41.     Finally, Spruce Point noted that Leidos expanded its risk disclosures regarding insurance coverage, as "Liedos is shipping defective products back from various countries [that] may not have the same protections as in the U.S." Spruce Point tweeted the following slide pointing out the additions to the Company's risk disclosures:

16





**Expanding Risks Around Insurance Protections**

Leidos is now expanding its language around insurance and legal protections. As we found, Leidos is shipping defective products back from various countries to the US. In some of these countries, they may not have the same protections as in the US.

Our insurance, customer indemnifications or other liability protections may be insufficient to protect us from product and other liability claims or losses.

We maintain insurance coverage with third-party insurers as part of our overall risk management strategy and because some of our contracts require us to maintain specific insurance coverage limits. However, not every risk or liability is or can be protected by insurance, and, for those risks we insure, the limits of coverage we purchase or that are reasonably obtainable in the market may not be sufficient to cover all actual losses or liabilities incurred. If any of our third-party insurers fail, cancel our coverage or otherwise are unable to provide us with adequate insurance coverage, then our overall risk exposure and our operational expenses would increase and the management of our business operations would be disrupted. Our insurance may be insufficient to protect us from significant product and other liability claims or losses. Moreover, there is a risk that commercially available liability insurance will not continue to be available to us at a reasonable cost, if at all. If liability claims or losses exceed our current or available insurance coverage, our business, financial position, operating results and prospects may be harmed. Regardless of the adequacy of our liability insurance coverages, any significant claim may have an adverse effect on our industry and market reputation, leading to a substantial decrease in demand for our products and services and reduced revenues.

In some circumstances we are entitled to certain legal protections or indemnifications from our customers through contractual provisions, laws, regulations or otherwise. However, these protections are not always available, can be difficult to obtain, are typically subject to certain terms or limitations, including the availability of funds, and may not be sufficient to cover all losses or liabilities incurred.

Source: Leidos 2020 Annual Report

42.     On this news, the Company's stock price fell $3.13, or 3.3%, to close at $90.38 per share on February 24, 2021, on unusually heavy trading volume.

**CLASS ACTION ALLEGATIONS**

43.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Leidos securities between May 4, 2020 and February 23, 2021, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

44.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Leidos's shares actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Leidos shares were traded publicly during the Class Period on the NYSE.  Record owners and other members of the Class may be identified from records maintained by Leidos or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

45.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

46.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

47.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Leidos; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

48.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

49.    The market for Leidos's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Leidos's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Leidos's securities relying upon the integrity of the market price of the Company's securities and market information relating to Leidos, and have been damaged thereby.

50.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Leidos's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Leidos's business, operations, and prospects as alleged herein.

51.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Leidos's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive

assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

52.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

53.    During the Class Period, Plaintiff and the Class purchased Leidos's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

54.    As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Leidos, their control over, and/or receipt and/or modification of Leidos's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Leidos, participated in the fraudulent scheme alleged herein.

20

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

55.     The market for Leidos's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Leidos's securities traded at artificially inflated prices during the Class Period.  On January 25, 2021, the Company's share price closed at a Class Period high of $112.70 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Leidos's securities and market information relating to Leidos, and have been damaged thereby.

56.     During the Class Period, the artificial inflation of Leidos's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Leidos's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Leidos and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

57.     At all relevant times, the market for Leidos's securities was an efficient market for the following reasons, among others:

(a)     Leidos shares met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)    As a regulated issuer, Leidos filed periodic public reports with the SEC and/or the NYSE;

(c)    Leidos regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)    Leidos was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

58.    As a result of the foregoing, the market for Leidos's securities promptly digested current information regarding Leidos from all publicly available sources and reflected such information in Leidos's share price. Under these circumstances, all purchasers of Leidos's securities during the Class Period suffered similar injury through their purchase of Leidos's securities at artificially inflated prices and a presumption of reliance applies.

59.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the

importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

60.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Leidos who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

61.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

62.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and

other members of the Class to purchase Leidos's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

63.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Leidos's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

64.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Leidos's financial well-being and prospects, as specified herein.

65.    Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Leidos's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Leidos and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

66.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

67.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Leidos's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

68.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Leidos's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Leidos's securities during the Class Period at artificially high prices and were damaged thereby.

69.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Leidos was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Leidos securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

70.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

71.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

72.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

73.     Individual Defendants acted as controlling persons of Leidos within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

74.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

75.     As set forth above, Leidos and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other

members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: March 4, 2021

By:     */s/ Gregory B. Linkh*
**GLANCY PRONGAY & MURRAY LLP**
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 530
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: glinkh@glancylaw.com

Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Attorneys for Plaintiff Anthony G. Morton*

28

## SWORN CERTIFICATION OF PLAINTIFF

## LEIDOS HOLDINGS, INC. HOLDINGS LIMITED (LDOS) SECURITIES LITIGATION

I, Anthony G. Morton, certify that:

1.   I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2.   I did not purchase the Leidos Holdings, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.   I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.   My transactions in Leidos Holdings, Inc. securities during the Class Period set forth in the Complaint are as follows:

(See attached transactions)

5.   I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6.   I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

3/3/2021
_____
Date

DocuSigned by:
*Anthony G. Morton*
_____
6B7DE2C9245E40C
Anthony G. Morton

**Anthony G. Morton's Transactions in Leidos Holdings, Inc. (LDOS)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 6/12/2020 | Bought | 8 | $99.9207 |
| 6/12/2020 | Bought | 100 | $99.8990 |
| 6/12/2020 | Bought | 92 | $99.9000 |